# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Kevin Twyman, | Case No. 22-cv-1361 (NEB/ECW) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| B. Eischen, *FPC-Duluth Warden*, | |
| Respondent. | |

This matter is before the undersigned United States Magistrate Judge on Petitioner Kevin Twyman's ("Petitioner" or "Twyman") Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") (Dkt. 1). This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that the Petition be denied.

## I.   BACKGROUND

**A.   General Background**

On June 28, 2018, an Indictment in *United States v. Twyman*, No. 18-CR-157-2 ("18-CR-157-2"), was filed against Twyman in the United States District Court for the Northern District of Illinois. Count Five of the Indictment, relevant to the present Petition provides in relevant part as follows:

> On or about December 6, 2017, at Chicago, in the Northern District of Illinois, Eastern Division,
>
>  and KEVIN TWYMAN,
>
> defendants herein, did knowingly and intentionally possess with intent to distribute a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II Controlled Substance; and 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance;
>
> In violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

(Dkt. 7 ¶ 5; 18-CR-157-2, Dkt. 197 at 7.)[1]

On May 20, 2019, Twyman entered into a voluntary Plea Agreement in which he agreed to enter a plea of guilty to the following count of the Indictment:

> Count Five, which charges defendant with possession with intent to distribute a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (Nphenyl- N-1 11-(2-phenylethyl)-4-piperindinyll propanamide), a Schedule II Controlled Substance; and 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Tit1e 21, United States Code, Section 841(a).

(18-CR-157-2, Dkt. 453 ¶ 5.) Twyman further admitted "the following facts and that those facts establish his guilt beyond a reasonable doubt":

---

[1] Unless stated otherwise, references to page citations refer to the CM/ECF pagination.

* * *

> TWYMAN acknowledges that the amount of controlled substances that he possessed with intent to distribute, and that was reasonably foreseeable to him, **was approximately at least 496 grams of fentanyl** and 245 grams of heroin.

(*Id.* at 3-4 ¶ 6 (emphasis added).)

On May 20, 2019, United States District Judge John Z. Lee from the Northern District of Illinois, Eastern Division, held a change of plea hearing for Twyman. (18-CR-157-2, Dkt. 452.) Judge Lee's Order provided:

> Change of plea hearing held. Defendant was informed of his rights. Defendant withdrew his plea of not guilty to count five of the indictment and entered a plea of guilty as to count five. Judgment of guilty is entered as to count five in the indictment. The cause is referred to the probation office for the preparation of a pre-sentence investigation report.

(*Id.*)

On September 5, 2019, Twyman filed a sentencing memorandum. (18-CR-157-2, Dkt. 499.) In this memorandum, Twyman admitted to the facts contained in the plea agreement. (*Id.* at 2.) Twyman also admitted as follows:

> **Count Five subjects Mr. Twyman to a mandatory minimum sentence of 120 months under Title 21, United States Code §841(a)(1) and §841(b)(1)(A)(vi)**. Based upon the applicable recommended guideline range and the Title 18, United States Code Section 3553(a) factors discussed below, Mr. Twyman requests the mandatory minimum sentence of 120 months.

(18-CR-157-2, Dkt. 499 at 3 (emphasis added).)

3

The Pre-Sentencing Report ("PSR") prepared for Twyman asserts that "Twyman was charged under 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(vi)."[2] (Dkt. 7 ¶ 6.) Paragraph 5 of the PSR also provides:

> 5. On May 20, 2019, the defendant appeared before the Honorable John Z. Lee, withdrew his plea of not guilty and, pursuant to a written and non-binding 11(c)(1)(A) plea agreement, entered a plea of guilty to Count 5 of the indictment and admitted to relevant conduct. Count 5 charges that on or about December 6, 2017, ▇▇▇▇▇▇▇ and Kevin Twyman did knowingly and intentionally possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyl] propanamide) and 100 grams or more of a mixture and substance containing a detectable amount of heroin; in violation of 21 U.S.C. §841(a)(1). Pursuant to the plea agreement, each party is free to recommend whatever sentence it deems appropriate.

(*Id.*) In addition, Paragraph 18 of the PSR provides that Twyman was responsible for 496 grams of fentanyl:

> 18. **Base Offense Level:** The United States Sentencing Commission Guideline for a violation of 21 U.S.C. §841(a)(1) is found in USSG §2D1.1 and calls for a base offense level specified in the Drug Quantity Table set forth in subsection (c). However, pursuant to Application Notes 7 and 8, where there are multiple drug transactions or drug types, the quantities of drugs are to be combined and added (tables for making necessary conversions are included in this guideline). The defendant admits the amount of fentanyl that he is responsible for is approximately 496 grams while the amount heroin he is responsible for is approximately 245 grams. As noted below, the amount of converted drug weight for which the defendant is accountable is the equivalent of approximately 1,485 kilograms. The base offense level is 30 because the instant offense involved at least 1,000 kilograms, but less than 3,000 kilograms of converted drug weight. USSG §2D1.1(a)(5) and (c)(5).    **30**

(*Id.* ¶ 7 (emphasis in original and emphasis omitted).) According to the Statement of Reasons in the Northern District of Illinois case, the Court adopted the PSR with changes, but no changes were noted in the Statement of Reasons. (Dkt. 7 ¶ 8.) However, the

---

[2] The Court notes the entire PSR and the Statement of Reasons were not provided as part of the record in this case and are filed under seal in the 18-CR-157-2 matter. However, Petitioner does not dispute the contents of these documents.

cover sheet to the Presentence Investigation Report indicates that the Report was corrected as ordered by the Court to address: (1) Paragraph 13 regarding the number of bottles of fentanyl recovered; (2) Twyman's criminal history; and (3) Twyman's educational background. (*Id.*)

The September 19, 2019 imposition of Judgment for Twyman provided that he pleaded guilty to Count Five of the Indictment and he was "adjudicated guilty" of Count Five for "21 U.S.C. § 841(a)(1) possession with intent to distribute a [sic] Fentanyl and Heroin[.]" (Dkt. 7-2; 18-CR-157-2, Dkt. 508 at 1.) Twyman was sentenced to a total term of "120 months (10 years)" of imprisonment. (*Id.* at 2.)

Twyman has a projected release date of September 20, 2025, via an early release under 18 U.S.C. § 3621(e) for successful completion of a Residential Drug Abuse Program. (Dkt. 7 ¶ 4; Dkt. 7-2; Dkt. 7-3.)

**B.    Twyman's Petition**

Twyman's Petition, asserts the following grounds for relief:

**GROUND ONE**:    The Bureau of Prisons is not implementing or applying any First Step Act credits to my percentage of sentence satisfied[.]

**GROUND TWO**: By the Bureau of Prisons not implementing and apply [sic] my earned FSA credits I am having to wait longer before I "qualify" to be released on CARES Act's "50% of sentence completed."

**GROUND THREE**: No summary calculation has been provided to me showing a summary total of all my productive activities (both work and classes completed) which will apply to my total sentence.

**GROUND FOUR**: The BOP continues in violation of federal law by their not implementing and applying earned First Step Act Credits. Their inactions are causing inmates to spend additional time in prison as they are required to

5

complete additional time beyond the credited time they have earned off their sentence.

(Dkt. 1 at 6-8.) Petitioner seeks the following relief, "Implement and apply all First Step Act credits I have earned since 2019, and for those credits to be applied to my 'percentage of statutory term served' total. I fully qualify for FSA credits (See enclosed computation Data sheet provided by the DOJ / BOP) and to date have received no benefit." (*Id.* at 8.)

**C.    BOP's Response**

At the time Twyman filed his Petition, he was entered into the BOP's database as being eligible to earn time credits under the First Step Act. (Dkt. 7 ¶ 3, Dkt. 7-1 at 1.) "In light of this petition, staff reviewed whether Twyman was eligible to earn time credits." (Dkt. 7 ¶ 3.) The BOP has determined that Twyman is, in fact, ineligible to earn time credits under to 18 U.S.C. § 3632(d)(4)(D)(lxvi) based on his plea of guilty to Count Five of the Indictment, Possession with Intent to Distribute Fentanyl and Heroin, in violation of 21 U.S.C. § 841(a)(1); paragraphs 5 and 18 of the PSR; and the sentencing court's Statement of Reasons. (Dkt. 7 ¶¶ 3-8; Dkt. 7-1 at 1.).)

## II.    ANALYSIS

Twyman asserts in his Reply that he has earned 645 days of time credits under the FSA. (Dkt. 12 at 1.) Twyman acknowledges he was charged under Count Five of the Indictment with violating 21 U.S.C. § 841(a)(1); that he pleaded guilty to Count Five; that in his guilty plea he admitted to violating 21 U.S.C. § 841(a)(1) as he "knowingly and intentionally possessed with intent to distribute 400 grams or more of a mixture and

substance containing a detectable amount of fentanyl (N-phenyl-N-1 [1-(2-phenylethyl)-4-piperindinyl] propanamide) and 100 grams or more of a mixture and substance containing a detectable amount of heroin"; that the sentencing judge orally pronounced his sentence pursuant to 21 U.S.C. 841(a)(1); that the Judgment in his criminal case provides that he pleaded guilty to Count Five of the indictment in violation of 21 U.S.C. § 841(a)(1); and that the BOP's records indicate "that his 'Current Obligation' or the sentence he is serving is for a violation of 21 U.S.C. § 841(a)(1)." (*Id.* at 1.) Based on this, Twyman argues that contrary to the position of the BOP, he is eligible to earn time credits under the First Step Act because his conviction under 21 U.S.C. § 841(a)(1) is not one of the excluded offenses listed by Congress under 18 U.S.C. § 3632. (*Id.* at 2.)

"Writs of habeas corpus may be granted by the Supreme Court, . . . the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The writ of habeas corpus under Section 2241 shall not extend to an individual unless "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). A prisoner may challenge the execution of his sentence through a § 2241 petition filed in the district where he is incarcerated. *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . ." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citation omitted). Here, Twyman is incarcerated in this District and challenges the duration of his confinement, and Respondent does not challenge the Court's jurisdiction. Accordingly, the Court finds that habeas jurisdiction is appropriate here. *See Salter v. Fikes*, No. 20-CV-2253

(ECT/ECW), 2021 WL 2365041, at *2 (D. Minn. May 5, 2021), *R & R. adopted*, 2021 WL 2354934 (D. Minn. June 9, 2021); *Ford v. Fikes,* No. 20-CV-00238 (PAM/HB), 2020 WL 4454929, at *2 (D. Minn. July 6, 2020) (concluding that where "Petitioner is in custody, and he has challenged the duration of his confinement," "the Court has jurisdiction over the petition") (citations omitted), *R. & R. adopted*, 2020 WL 4449952 (D. Minn. Aug. 3, 2020).

The First Step Act of 2018 ("FSA"), Pub. L. 115-391, 132 Stat. 5194 (2018), "offers prisoners an opportunity to earn [t]ime [c]redits applicable to their periods of residential reentry center placement, home confinement or supervised release, by participating in certain evidence-based recidivism reduction . . . programs and productive activities." *Salter*, 2021 WL 2365041, at *1 (marks and citation omitted); *see also Mills v. Starr*, No. 21-cv-1335 (SRN/BRT), 2022 WL 4084178, at *1, 4 (D. Minn. Aug. 17, 2022), *R. & R. adopted*, 2022 WL 4080750 (D. Minn. Sept. 6, 2022).

In creating this incentivized time credit system, Congress excluded certain categories of inmates from earning time credits:

> (A) In general.--A prisoner, **except for an ineligible prisoner under subparagraph (D)**, who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time

8

> credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A) (emphasis added).

Subparagraph D referenced in § 3632(d)(4)(A) provides, "A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law. . . ." *Id.* § 3632(d)(4)(D). Among the dozens of excluded convictions are a number of convictions under the Controlled Substances Act. Relevant here, 18 U.S.C. § 3632(d)(4)(D)(lxvi), excludes inmates serving a sentence for a conviction related to certain offense involving Fentanyl-related substances:

> (D) Ineligible prisoners.—A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law:
>
> * * *
>
> (lxvi) Subparagraph (A)(vi) or (B)(vi) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(F) or (2)(F) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a mixture or substance containing a detectable amount of N phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof.

18 U.S.C. § 3632(d)(4)(D)(lxvi).

Section 841 provides in relevant part as follows:

> **(a) Unlawful acts**
>
> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

9

> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
>
> (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.
>
> **(b) Penalties**
>
> Except as otherwise provided in section 849, 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:
>
> (1)(A) In the case of a violation of subsection (a) of this section involving—
>
> * * *
>
> (vi) 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;
>
> * * *
>
> such person shall be sentenced to a term of imprisonment which may not be less than 10 years. . . .

21 U.S.C. § 841(a)-(b).

Although Twyman argues that his crime of conviction is not listed as a disqualifying offense, this argument is contrary to the language of § 841 and the sole count of the Indictment (Count Five) to which he pled guilty. Twyman attempts to read § 841(a) in a vacuum, which does not even set forth any possible sentences. The penalties for a violation of § 841(a) are set forth in § 841(b). This is reflected by Count Five of the Indictment charging that Twyman "did knowingly and intentionally possess with intent to distribute a controlled substance, namely, **400 grams or more** of a mixture

10

and substance containing a detectable amount of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide). . . ." (Dkt. 7 ¶ 5; 18-CR-157-2, Dkt. 197 at 7 (emphasis added).)  Section 841(a) contains no language regarding the amount of fentanyl, whereas § 841(b)(1)(a)(vi) specifically provides the penalty of imprisonment for violating subsection (a) where the crime involves more than 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide shall be not less than 10 years.  *See generally*, *Turner v. Keyes*, No. 22-CV-321-WMC, 2022 WL 17338577, at *4 (W.D. Wis. Nov. 30, 2022) ("Section 841(b)(1) expressly sets forth the penalties for convictions under § 841(a), supporting at least a stronger argument that when a defendant is convicted under § 841(a), he or she is convicted under § 841(b)(1).").

Further, not only did Twyman plead guilty to Count Five, as part of his plea he also admitted "that the amount of controlled substances that he possessed. with intent to distribute, and that was reasonably foreseeable to him, **was approximately at least 496 grams of fentanyl**," and that these facts establish his guilt beyond a reasonable doubt. (18-CR-157-2, Dkt. 453 ¶¶ 5-6 (emphasis added).)  This is the amount attributed to Twyman in the PSR and adopted by the sentencing court.  (Dkt. 7 ¶¶ 7-8.)  In addition, the Petitioner admitted in his sentencing memorandum that "Count Five subjects Mr. Twyman to a mandatory minimum sentence of 120 months under Title 21, United States Code §841(a)(1) and § 841(b)(1)(A)(vi)." (18-CR-157-2, Dkt. 499 at 3.)  This was the term that Twyman was ultimately sentenced to for the violation of 21 U.S.C. § 841(a)(1)

11

under Count Five and the Judgement also provided that he was "adjudicated guilty" of Count Five (18-CR-157-2, Dkt. 508 at 1-2.) In other words, given the language of Count Five of the Indictment, Twyman's admissions in his plea, the PSR, and the sentencing court's adoption of the PSR, the fact that the Judgment and Indictment do not list the talismanic inclusion of § 841(b)(1) is of no avail under the facts of this case. *See Lenze v. Gilley*, No. CV 6:21-115-DCR, 2021 WL 5862561, at *2 (E.D. Ky. Nov. 5, 2021) ("While Lenze argues that his crime of conviction is not listed as a disqualifying offense, this argument is belied by the language of the sole count of the Indictment (to which he pled guilty), which specifies that a death resulted from the use of the heroin distributed by Lenze, making his offense punishable under 21 U.S.C. § 841(b)(1)(C).").

For all of these reasons, the Court finds that the BOP correctly assessed Twyman as ineligible to receive time credits under the FSA and, consequently, the Petition should be dismissed.

Because the Court can resolve Twyman's Petition by relying on the record, an evidentiary hearing is not necessary. *See Wallace v. Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983) ("[D]ismissal of the habeas petition without a hearing is proper where . . . the dispute can be resolved on the basis of the record.") (citations omitted).

### III.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. Kevin Twyman's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. 1) be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

Dated: April 4, 2023　　　　　　　　　　　　　*s/Elizabeth Cowan Wright*
　　　　　　　　　　　　　　　　　　　　　　ELIZABETH COWAN WRIGHT
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c)